[L. A. No. 849.    Department Two. — September 27, 1901.]

## WILLIAM H. PETTIBONE, Respondent, v. LAKE VIEW TOWN COMPANY, Appellant.

CORPORATIONS — EXECUTION OF CONTRACT — AGENCY FOR SALE OF LANDS — AUTHORITY OF PRESIDENT — ACTING MANAGER. — The president of a corporation engaged in selling lands, who, by general resolution of the board of directors, was authorized to make conveyances, and who was manager in fact of its business, and habitually executed contracts for the corporation, without objection from any member of the board of directors, was authorized to bind the corporation by a contract executed by him in the name of the corporation, as president, constituting the plaintiff the exclusive agent of the corporation for the sale of its lands in certain counties, and requiring of him the performance of other services.

ID. — ACTION UPON CONTRACT — SALE OF LANDS — STATUTE OF FRAUDS. — In an action for services rendered under the contract for the agency to sell lands, the statute of frauds is no defense. No authority was given to the agent to execute conveyances, and even if he could not make a valid contract of sale to bind the corporation, it would be no defense to the action for services rendered to the corporation, for which it had the power to contract.

ID. — UNEXECUTED CLAUSE APPENDED — CONTRACT NOT INCHOATE. — An unexecuted clause appended to the executed contract, after the signatures thereto, purporting to be an agreement by another corporation to pay for one half of the plaintiff's services, does not make the contract for full payment thereof, made between the parties who executed it, inchoate or incomplete.

APPEAL from a judgment of the Superior Court of Riverside County and from an order denying a new trial.    J. S. Noyes, Judge.

The facts are stated in the opinion.

Smith, McNutt & Hannon, for Appellant.

Collier & Evans, for Respondent.

HAYNES, C. — Action to recover for services rendered under an alleged contract. The plaintiff had findings and judgment, and the defendant appeals from the judgment and an order denying a new trial.

The defendant is a corporation organized under the laws of this state, and having an office in Chicago, under the charge of

F. E. Brown, who was a director and the president of it. The business of the corporation was the sale of town lots and other lands in southern California. Plaintiff was, at the date of said contract, and prior thereto, a resident of Chicago, and the contract under which the plaintiff rendered services was made in that city on November 29, 1897. The contract is in writing, and is set out in full in the findings. It constituted the plaintiff its exclusive agent for the sale of lands in the counties of Riverside, San Bernardino, and Los Angeles, on a salary of seventy-five dollars per month and certain commissions, the term of service to be three months, commencing December 1, 1897, and to continue thereafter until terminated by a sixty-days' notice, in writing, by either party to the other.

1. The principal question relates to the execution of the contract by the corporation. It is signed thus: "Lake View Town Company, by F. E. Brown, President."

The court found that no resolution was passed by the directors of said corporation authorizing the execution of said contract; that the matters and things contained therein are all authorized by the articles of incorporation to be done and performed by said corporation, and are matters within the ordinary course of its business; that on and prior to the date of said contract, and from thence until the date of the trial, said F. E. Brown was the president and general manager of the business of the corporation, and personally conducted it, and, as such president and general manager, had full authority to execute said contract. These findings are fully sustained by the evidence. Upon cross-examination, Mr. Brown, the president, testified that the corporation commenced active business in May, 1897; that there was a general resolution authorizing him to make conveyances; that he executes deeds, makes land contracts and delivers them and collects the money, and has been doing so ever since they had been carrying on the business, and submits monthly statements to the secretary; that he thought they had no general manager, but admitted that he did the whole planning and work of the company, and as a matter of fact managed the business ever since it began, and that there had been two or three meetings of the directors since the contract with plaintiff was made. No intimation is given that any objection was made by the board of directors, or by any one, to the contract in question, or to any of the acts of the president in the conduct of the business of the cor-

poration.  That the president of this corporation had the power to bind it by the contract in question is sustained by *Crowley* v. *Genessee Mining Co.*, 55 Cal. 273, *Streeten* v. *Robinson*, 102 C. 1. 542, and *Bates* v. *Coronado Beach Co.*, 109 Cal. 162.  For numerous cases in other jurisdictions which cite and follow *Crowley* v. *Genessee Mining Co.*, 55 Cal. 273, see 3 Notes on California Reports, under that case.

Besides, this corporation seems to have been a family affair. Mr. Brown testified that his wife held about seventy-five per cent of the stock, one of his sons two or three shares, another son one or two shares, his daughter two or three, his brother a few shares, and his interest was "one share and his salary." He and his brother were directors, two other directors had one share each, and the fifth director had a few shares.  The principal office was at Chicago.

It is safe to assume that the wife and children had confidence in the husband and father, who was also a man of large experience in corporate affairs, having, as he testified, "organized over thirty companies."

Appellant contends, however, that Brown had no authority to execute this contract for the corporation; that whatever authority he may have had as president and business manager of the company, it could not include the authority to execute a contract of this character; and cites subdivision 5 of section 1624 of the Civil Code, which provides, among other things, that an agreement "for the sale of real property, or for an interest therein, . . . if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged." The authority of the plaintiff, as the agent of the corporation, is in writing, and besides, there is here no question between a purchaser who seeks to enforce against the corporation a contract made with Pettibone as its agent.  But however that may be, the contract with the plaintiff was the contract of the corporation itself.  The contract here involved is for the personal services of the plaintiff.  It does not purport to give him authority to make conveyances, and even if it were conceded that he could make no contract for the sale of lands that would be binding upon the corporation, it would constitute no defense to the action.  He executed such powers and performed such services as were given and required by the contract, and it does not appear that any of these were *ultra vires*.

But the contract included the performance of other services by plaintiff. He was to furnish "suitable advertisement of said lands" in the daily papers at Riverside, Redlands, and Los Angeles during the life of said agreement; and he was also to "devote a reasonable time to showing over the tract those parties visiting Lake View, who have already purchased."

2. It is further contended by appellant that the document or contract in question was inchoate and incomplete because it was not executed by the L. P. Hansen Company.

Below the signatures of the corporation and the plaintiff to the contract in question, there was written the following: —

"The L. P. Hansen Company hereby agrees to the employment of Mr. Wm. H. Pettibone as specified in above agreement, and will pay him $37.50 per month, and one half of such other expenses as may be approved of and agreed to by Col. L. P. Hansen; if services of said Wm. H. Pettibone are entirely satisfactory to said L. P. Hansen Co., the said company will continue this agreement indefinitely. Said company will also pay said Wm. H. Pettibone the commissions due from it, as provided in fourth section of above agreement.

"L. P. HANSEN COMPANY,
"By ——, President."

The court found that said added clause was not part and parcel of the agreement between plaintiff and defendant, and appellant specified that such finding is not justified by the evidence.

That appellant hoped, possibly expected, the Hansen company to join in the employment of plaintiff, and thus reduce its obligation to pay a monthly salary of $75 to $37.50 is probable; but it was not provided that the agreement executed and delivered by the Lake View Town Company to and with the plaintiff should depend upon that or any other contingency. Said contract was made on November 29, 1897, at the city of Chicago, where plaintiff then resided, and plaintiff's salary was to commence on the second day thereafter, and the plaintiff immediately removed to California and entered upon the performance of his contract, and the court further found that this employment continued until terminated by the written notice provided for in the contract, on May 15, 1898. The plaintiff testified that when "that attachment" was put on the contract he objected, and Mr. Brown said, "This is none

of your affair.   This is between Colonel Hansen and myself. If I can get him to pay half of it, that is my affair." The clause in the contract that compensation for extraordinary expenses should be such only "as are approved of and agreed to by Col. L. P. Hansen," is not inconsistent with plaintiff's contention.   Brown remained in Chicago, and the plaintiff came to California, where his contract was to be performed, and it is in no way inconsistent with the sole liability of defendant that the power of its agent to incur " extraordinary expenses" should have the approval of some third party in whom Brown had confidence.   But if, as contended by appellant, it was intended to be the joint contract of the Lake View Town Company and the L. P. Hansen Company, why was not the contract so written?   If the contract was "inchoate," and was not intended to be obligatory upon appellant unless assented to by Hansen, there could be no reason for not making it, upon its face, the joint contract of the two corporations.   The very form of the contract shows conclusively that appellant intended to be bound in any event.   It expressly provided "that the party of the first part agrees to pay the party of the second part, for his services, seventy-five dollars per month," etc. But aside from what seems to be the obvious intention of the parties as expressed in the contract, Brown was informed by letter from Hansen, under date of December 7, 1897, that he had not signed the agreement (and there is no pretense that he ever did), yet when Mr. Brown arrived in California in January he had the plaintiff assist him in showing property, and as late as March 1, 1898, wrote the plaintiff in regard to the business, without any intimation that their relations were affected in any manner by Hansen's failure to join in the contract.

As to other points made upon the insufficiency of the evidence to justify the findings, so far as they are not disposed of by what has been said, it is sufficient to say that the evidence upon behalf of the plaintiff is fully sufficient to sustain them, and the fact that there is a conflict in the evidence will not authorize a reversal.   We think, however, that the preponderance of the evidence is clearly with the plaintiff, upon all material facts.

There are thirteen specifications of errors of law assigned by appellant, the first seven of them being taken to the admission of letters written by Brown, the president of the corporation, to the plaintiff.   The objection made to this evidence is, that

Brown had no authority to bind the corporation. The authority of the president to contract for the services of the plaintiff has already been considered. The long-continued recognition of the agency of the plaintiff by the chief executive officer is material, not only upon the question of his authority to represent the corporation, but is also cogent evidence in rebuttal of Brown's testimony that there was no contract for his services, Hansen having failed or refused to execute it.

As to the letters written by Mr. Balgarnie to the plaintiff, it is sufficient to say that they related to the sale of the lands of the corporation, making suggestions and giving information about Eastern parties coming to purchase lands, and plaintiff testified that Mr. Brown told him to regard anything coming from Mr. Balgarnie as coming from himself. If it be conceded that they should have been excluded, the error in admitting them was harmless.

Upon his examination in chief, plaintiff was asked by his counsel, "What was the value of your time a month, during the time you were at Lake View?" Defendant objected, upon the ground that the complaint was not based upon that theory, and that it was not within the issue. This objection was overruled and defendant excepted. The witness answered, "Four hundred dollars a month." Defendant moved to strike out the answer, and this motion was denied. This was error. The findings and judgment, however, were based upon the contract, and were clearly within the issues, and conclusively show that both findings and judgment were unaffected by the evidence objected to. The judgment should therefore not be reversed because of that error. The sum of $206.25 found to be due in addition to the salary, was based upon the clause in the contract allowing commissions upon sales, and damages for failure of defendant to furnish lists and prices, whereby plaintiff was prevented from making sales that he otherwise would have made.

No other points require notice. I advise that the judgment and order appealed from be affirmed.

Gray, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFarland, J., Henshaw, J., Temple, J.