[No. 14248.  Department Two. — August 22, 1893.]

# B. M. GUNN, RESPONDENT, v. THE BANK OF CALIFORNIA, APPELLANT.

COMMISSION OF REAL ESTATE BROKER—FINDING PURCHASER. — Although the right of a real estate broker employed to negotiate a sale, to recover the agreed commission, is complete when he has found a purchaser able, ready and willing to purchase upon the vendor's terms, and does not depend upon the final acceptance by the purchaser of a conveyance of the property sold; yet he does not find a purchaser within the meaning of the rule if the purchaser does not sign a binding agreement to purchase, or is not produced before the vendor as a person ready and willing to enter into such a contract, and who offers to complete it provided the vendor will make the conveyance — and the mere finding of a person financially able, who verbally agrees with the broker to purchase upon the terms of the vendor and makes a deposit with the broker, to be returned if the title is defective, and who refuses to consummate the sale owing to a defective title, is not such a finding of a purchaser as entitles the broker to recover the agreed commission.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. M. Allen,* and *Newlands, Allen & Herrin,* for Appellant.

The plaintiff, in order to have been entitled to his commissions, should have brought the intending purchaser and the owner of the land together. (*Glentworth* v. *Luther*, 21 Barb. 145, cited in *Middleton* v. *Findla*, 25 Cal. 76, 82; *Keys* v. *Johnson*, 68 Pa. St. 42; *Dolan* v. *Scanlan*, 57 Cal. 261, 266; *Jewett* v. *Emson*, 2 Rob. [N. Y.] 165, 167; *Gillett* v. *Corum*, 7 Kan. 156, 160; *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 382; 38 Am. Rep. 441; *Zeimer* v. *Antisell*, 75 Cal. 509, 512; *McClave* v. *Paine*, 49 N. Y. 561, 563; 10 Am. Rep. 431; Story on Agency, sec. 28; *Potts* v. *Turner*, 6 Bing. 702, 706; *Wylie* v. *Marine Nat. Bank*, 61 N. Y. 416; *Moses* v. *Bierling*, 31 N. Y. 462; *McGavock* v. *Woodlief*, 20 How. 221; *Barnes* v. *Roberts*, 5 Bosw. 73; *Holly* v. *Gosling*, 3 Smith, E. D. 262; *Jacobs* v. *Kolff*, 2 Hilt. 133; *Kock* v. *Emmerling*, 22 How. 72; *Corning* v. *Calvert*, 2 Hilt. 56; *Trundy* v. *Hartford etc. Steamboat Co.*, 6 Rob. [N. Y.] 312; *Van Lien* v. *Byrnes*, 1 Hilt. 134; *Parker* v. *Walker*, 86 Tenn. 566; *Waterman* v. *Boltinghouse*, 82 Cal. 659.)  Or else he should have obtained a written contract from

the intending purchaser for the purchase of the property. (Civ. Code, secs. 1624, 1741; Code Civ. Proc., secs. 1971, 1973; Bishop on Contracts, sec. 1135; Story on Agency, sec. 24; Wharton on Agency, sec. 695; *Parker* v. *Waker*, 86 Tenn. 566; *Love* v. *Miller*, 53 Ind. 294; 21 Am. Rep. 192; *Goss* v. *Broom*, 31 Minn. 484; *Goss* v. *Stevens*, 32 Minn. 472; *Rice* v. *Mayo*, 107 Mass. 550; *Gilchrist* v. *Clarke*, 86 Tenn. 583.)

*Rhodes & Barstow*, for Respondent.

Gunn's work was done under the contract, and he was entitled to his commission, as soon as he had found the purchaser at the agreed purchase price. His right to commission depended in no manner either upon the character of the title or the opinion of the purchaser as to the title. (*Middleton* v. *Findla*, 25 Cal. 76; *Gonzales* v. *Broad*, 57 Cal. 224; *Phelps* v. *Prusch*, 83 Cal. 626; *Duffy* v. *Hobson*, 40 Cal. 240; 6 Am. Rep. 617; *Phelan* v. *Gardner*, 43 Cal. 311.)

DE HAVEN, J.—The plaintiff is a real estate broker, and brought this action to recover from the defendant one thousand dollars for commissions alleged to be due him for obtaining a purchaser of certain real estate owned by defendant. Judgment was rendered in the superior court in favor of the plaintiff for the amount demanded, and from this judgment and an order denying its motion for a new trial, the defendant appeals.

It appears from the record that the plaintiff and defendant entered into a written contract by which the plaintiff was authorized "to sell" the property described therein on or before January 20, 1890, for the sum of forty-one thousand dollars, or any less sum which might thereafter be fixed by defendant; and in the event of the property being sold by plaintiff within the time named, the defendant promised to pay to him a commission of one thousand dollars upon any sum which defendant might accept for the same. The court below found that the plaintiff complied with this contract on his part by obtaining within the time fixed in the contract a purchaser who was ready, willing, and able to purchase the property mentioned for the price of forty-one thousand dollars, "and that plaintiff before said twentieth day of January, 1890, notified defendant in writing that he had found such purchaser, who was ready, willing, and

able to purchase said real estate for said purchase price," and that defendant ratified the sale and furnished and delivered to the purchaser an abstract of title to said real estate.

The defendant contends that the finding of the court to the effect that plaintiff found a purchaser, who was able, ready, and willing to purchase the property described in plaintiff's contract of employment, is not sustained by the evidence, and this is the only matter necessary to be determined by us.   There is no conflict in the evidence upon this point, so that the real question which we are called upon to decide is, whether what was done by plaintiff amounted to finding a purchaser within the meaning of the law which entitles a broker to recover his commissions when he has found a purchaser who is able, ready, and willing to enter into a contract of purchase upon the terms authorized by his principal.   The facts upon which this question arises are these: On the 19th of December, 1889, one Keating orally agreed with the plaintiff to purchase the property referred to for the sum of forty-one thousand dollars, and paid to the plaintiff five hundred dollars on account of said purchase price, taking a receipt therefor signed by the plaintiff alone, which receipt recited that the purchaser was to have twenty days within which to examine the title to the property, and that the deposit would be returned to him should the title prove defective.   On the same day the plaintiff sent to a Mr. Brown (who seems to have been acting for defendant in the matter) the following letter : —

"*Dear Sir:* I beg leave to inform you that I have this day sold the lot and improvements known as 'The Golden Age Flour Mill Property' . . . . for the sum of forty-one thousand dollars, less one thousand dollars commission, and have given purchaser twenty days to examine title to same.   Please send me abstract and approve sale, and oblige."

This letter was returned by Brown with this endorsement:

"I herewith approve above sale.

"THE BANK OF CALIFORNIA,

"THOMAS BROWN."

It is conceded that Keating was financially able to pay the price he orally agreed to pay for the land, but he signed no

contract which bound him to complete the purchase in case the title to the land was perfect, and plaintiff did not introduce him to Brown, or inform him who was the purchaser referred to in the above letter, and Brown did not learn his name until about the time the title was rejected by the attorney of such purchaser. Keating refused to complete the sale " because he was informed and advised by his attorney that the title of defendant to said real estate was defective"; and in this connection the court also found that " at the time of the making of the said contract between the plaintiff and defendant, the title of defendant to a certain portion of said real estate was defective, and said defect up to the time said purchaser refused to complete said purchase, had not been cured or remedied."

It is, of course, well settled that when a broker employed simply to negotiate a sale of real estate has found a purchaser able, ready, and willing to purchase upon the vendor's terms, his right to the agreed commission is complete, and does not depend upon the final acceptance by the purchaser of a conveyance of the property sold. This proposition is very clearly stated in the cases of *Middleton* v. *Findla*, 25 Cal. 76; *Gonzales* v. *Broad*, 57 Cal. 224; *Duffy* v. *Hobson*, 40 Cal. 244; 6 Am. Rep. 617; *Phelan* v. *Gardner*, 43 Cal. 311; *Phelps* v. *Prusch*, 83 Cal. 626, cited by the plaintiff, and is also declared to be the law in the later case of *Smith* v. *Schiele*, 93 Cal. 144, in which this court construed a broker's contract similar to that under which the plaintiff claims, saying: "Nor was the payment of commissions contingent upon the consummation of the sale; for all that the brokers were required to do by the terms of their employment to entitle them to their commissions was to produce a *bona fide* purchaser for the property on the vendor's terms, and such is the well settled meaning in this state of a broker's authority to sell."

But the question here is: What is "finding" or "producing" a purchaser within the meaning of the rule of law declared in this and the other cases cited? Is it sufficient for a broker to merely find a person financially able, and who verbally agrees with him to purchase upon the terms of the vendor, and makes a deposit, but who neither signs a binding agreement to purchase upon such terms, nor is produced before the vendor as a

person ready and willing to enter into such a contract? It seems to us very clear that this question must be answered in the negative. The contract of the broker is to negotiate a sale; that is, to procure a valid contract to purchase, which can be enforced by the vendor if his title is perfect; or if he does not procure such contract, to bring the vendor and the proposed· purchaser together, that the vendor may secure such a contract, unless he is willing to trust to an oral agreement. In speaking of the ordinary contract of a broker, the court of appeals of the state of New York, in *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; 38 Am. Rep. 441, say: "The duty he undertakes, the obligation he assumes, as the condition of his right to demand commissions, is to bring the buyer and seller to an agreement. In this all the authorities substantially concur, although expressing the idea with many differences of phrase and illustration."

In *Hayden* v. *Grillo*, 35 Mo. App. 647, the court in a well-considered opinion say: "This contract on the part of the broker is complete, when he delivers or tenders to the owner a valid written contract, containing the terms of sale agreed on, signed by a party able to comply therewith, or to answer in damages if he should fail to perform. This is all the agent can do, and when it is done he is entitled to his commissions. But the necessity of a written contract of sale may be rendered unnecessary if the agent bring the vendor and vendee together,. and the latter is able and willing, and offers to complete the contract, provided the vendor will make the conveyance. In· such a case the agent has done all that he can do, and if the vendor under such circumstances refused to complete the sale,. he nevertheless will be compelled to pay the agent his commis- sions. . . . . The reason of the foregoing rule is very apparent. The object of the vendor is to effect a sale of his property, and when the real estate broker produces a contract executed by a solvent purchaser, he is then entitled to pay for his services, whether the trade is finally consummated or not, because if the vendee refuses to take the property, the vendor holds the con- tract, which renders the former liable for all damages (includ- ing commissions paid by the vendor to the broker) for a failure to comply." So, also, in the case of *Yeager* v. *Kelsey*, 46 Minn.

402, it was held by the supreme court of Minnesota, that an agent authorized to sell real estate does not earn his commission by procuring a person to proceed so far as paying a part of the agreed price, but who entered into no obligatory contract of purchase.

The finding of the court in the present case, that the title of the defendant to the land plaintiff was employed to sell was defective, and was for this reason rejected by Keating, is not material to the question discussed in this opinion. The defendant was not called upon to litigate that question with the plaintiff in this action. The right of plaintiff to the agreed compensation depends upon the performance of his contract to procure a purchaser, and as he did not do this, and defendant neither waived nor prevented such performance, he has not earned his commission. The case of *Phelps* v. *Prusch*, 83 Cal. 626, which is cited and relied upon by plaintiff, is not in conflict with the views expressed by us at this time. In that case the judgment really turned upon the fact that the vendor himself prevented a consummation of the sale. He was informed of all that the brokers did in the matter of making the sale, and knew who the purchaser was, and after being thus fully informed, acquiesced in what they had done, but afterwards became dissatisfied and exerted himself to and succeeded in preventing the sale. In the case of *Smith* v. *Schiele*, 93 Cal. 144, the proposed purchaser did not sign a binding contract, but he was produced before the vendor as such purchaser, and the vendor fully informed of what the brokers had done, and such purchaser was accepted by the vendor. In effect it appeared that the vendor was satisfied with the security afforded by the deposit paid and trusted to the verbal agreement, and it was properly held in that case that the brokers had earned their commissions. The difference between that case and the one we are now considering is apparent. The plaintiff here did not produce before the defendant any purchaser, nor even inform the defendant of the name of the person with whom he was negotiating. It follows, from what has been said, that the plaintiff is not entitled to recover upon the facts disclosed by the record before us.

Judgment and order reversed.

McFarland, J., and Fitzgerald, J., concurred.